Below is an opinion of the court.

_David W. Hercher_
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Chapter 7 |
| **Jennifer Ann McCaw**, | Case No. 18-30916-dwh7 |
| Debtor. | Adversary Proceeding No. 18-3057-dwh |
| **Ronald A. Owen**, | MEMORANDUM DECISION RE MOTIONS |
| Plaintiff, | |
| v. | NOT FOR PUBLICATION |
| **Jennifer Ann McCaw**, **Alan McCaw**, and **Thomas O. Regan**, | |
| Defendants. | |

I.      **Introduction**

In this action, Ronald Owen objects to and requests revocation of the chapter 7 bankruptcy discharge granted to Jennifer Ann McCaw. Because his claims either fail to state claims for relief or are without supporting evidence, I will grant judgment on the pleadings or summary judgment in her favor on all claims in this action and deny his pending motions.

Page 1 – MEMORANDUM DECISION RE MOTIONS

## II.    Background

In the initial complaint filed on June 7, 2018, Owen named three defendants: Jennifer McCaw, the debtor in this chapter 7 case; her husband, Alan McCaw; and Thomas O. Regan.[1] (Because the McCaws share a last name, I refer to them by their first names.)

Jennifer and Alan answered the complaint,[2] but Regan did not. I dismissed the claims against Alan and Regan for lack of subject-matter jurisdiction,[3] leaving Jennifer as the sole remaining defendant. Owen then filed first-amended,[4] second-amended,[5] and third-amended[6] complaints. Other than my dismissal of claims against Alan and Regan, I have not dismissed or stricken allegations from any of the complaints, and Owen made each complaint amendment voluntarily.

On November 6, I ordered that two documents constitute Owen's complaint: the Complaint (Third Amended),[7] filed September 21, and the First Amended Motion to Revoke Bankruptcy Discharge,[8] filed October 1.

Jennifer has filed two dispositive motions: for summary judgment[9] and for judgment on the pleadings.[10] The summary-judgment motion includes the declaration of the chapter 7 trustee, Amy Mitchell. Jennifer has also filed her concise statement of facts supporting summary

---

[1] Docket item 1.
[2] Docket items 10, 14.
[3] Docket item 29.
[4] Docket item 34.
[5] Docket item 73.
[6] Docket item 58.
[7] Docket item 58.
[8] Docket item 75.
[9] Docket item 126.
[10] Docket item 130.

judgment[11] and memorandum supporting both motions.[12] On December 24, Owen filed his objections to the trustee's declaration,[13] objections to the motion for judgment on the pleadings,[14] response to Jennifer's concise statement of facts,[15] opposition to summary judgment,[16] response to her declaration supporting summary judgment,[17] and memorandum.[18]

Also on December 24, Owen filed the following motions: motion to sanction trustee,[19] crossclaim against the trustee,[20] motion "of special issue" re the trustee's declaration,[21] motion to reopen pleadings,[22] motion for contempt on discovery,[23] and second-amended motion to revoke discharge.[24]

On January 15 and 22, 2019, I held hearings on all the motions. On January 22, after that day's hearing, the court clerk docketed the following three additional papers mailed to the court by Owen: Plaintiff Response to Defendants Response on Contempt Motion [ECF 156],[25] Affidavit to Repudiate Misconstruction Summary Judgment & Judgment on Pleadings,[26] and Notice of Special Issue: Allodial Declaration Under Land Patent.[27]

---

[11] Docket item 127.
[12] Docket items 128, 131.
[13] Docket item 143.
[14] Docket item 147.
[15] Docket item 148.
[16] Docket item 149.
[17] Docket item 150.
[18] Docket item 151.
[19] Docket item 141.
[20] Docket item 142.
[21] Docket item 143.
[22] Docket item 144.
[23] Docket item 145.
[24] Docket item 146.
[25] Docket item 162.
[26] Docket item 163.
[27] Docket item 164.

### III. Standards for dispositive motions

#### A. Summary judgment

Summary judgment is available if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A party may obtain summary judgment by pointing out that there is no evidence that would allow a reasonable factfinder to decide in favor of the opposing party.[29] The opponent has the burden to present the court with admissible evidence.[30] The function of summary judgment is not to decide disputed questions of fact, so the opponent need not prove its claims to escape summary judgment. But the opponent must present some admissible evidence to demonstrate the existence of a genuine issue of material fact preventing judgment in the movant's favor.[31]

A party asserting that a fact is genuinely disputed must support the assertion in one of the ways set forth in Federal Rule of Civil Procedure (Civil Rule) 56(c)(1), the most common of which is citing to affidavits or declarations.

Because Owen is representing himself, I added the following extra information to the language of the standard scheduling order:[32]

> Because plaintiff is representing himself, a copy of LBR 7056-1 [the local rule governing summary judgment] is attached to this order for his convenience. Plaintiff should study it carefully. In particular, if plaintiff wishes to oppose summary judgment, he should be aware of the requirement to file a response to defendant's Concise Statement of Material Facts and to provide declarations and/or other factual materials to support his position.[33]

---

[28] Fed. R. Civ. P. (Civ. R.) 56(a); Fed. R. Bankr. P. (Bankr. R.) 7056.
[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[30] Civil Rule 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[31] Civil Rule 56(c)(1)(B).
[32] Docket item 137.
[33] Docket item 137 at 2.

Nevertheless, he included no affidavits, declarations, or any factual materials in his opposition to summary judgment.

### B.    *Judgment on the pleadings*

A party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial."[34] A court may grant the motion if, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."[35] In other words, judgment on the pleadings is proper when, accepting the allegations of the nonmoving party, the moving party is entitled to judgment. A motion for judgment on the pleadings is functionally identical to a motion to dismiss for failure to state a claim.[36]

## IV.    Discovery

### A.    *Owen's motions for contempt and to reopen pleadings*

In Owen's motion for contempt of discovery,[37] he requests relief under Civil Rule 37(a)(4) and an order "of contempt on discovery" under Civil Rule 37(b)(2)(A)(vii) for "failures to disclose per FRCP 26(a) [ECF 114]." He contends that Jennifer's lawyer "is in violation of its own Discovery relief [ECF 69], filed September 28, 2018." He alludes to his request for "account documents" and says that her lawyer "provides evasive [note 1] answers account-specific [note 2] information, as required under FRCP 34(a)(1)." Note 1 says "FRCP37(a)(4)," and note 2 says "see 'Disc.' packet; 'Notice of Interrogatory (First Amended)'." Also, he bases his motion to re-open pleadings in part on "[f]ailure of Defense to

---

[34] Civil Rule 12(c); Fed. R. Bankr. P. (Bankr. R.) 7012.
[35] *Gregg v. Haw., Dept. of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).
[36] *Id.*
[37] Docket item 145.

comply with Discovery requirements [note 4] under FRCP 34(a)(1)(A)." Note 4 says "See 'Disc' exhibit & sanction under motion."

In Jennifer's response,[38] she says she has responded to and answered all of his discovery requests; he has not attached discovery requests and her answers, so one cannot tell what he is complaining about; and he has not complied with Civil Rule 37(a)(1), requiring him to seek to resolve discovery disputes informally before filing a motion to compel and to certify that he did so in good faith. She requests that the motion be denied and that the court award her attorney fees under Civil Rule 37(a)(5)(B).

A motion to hold a party in contempt may not be filed unless the party has violated a court order compelling discovery; I've entered no such orders. Even if I were to interpret the contempt motion as a motion to compel, it would be deficient. Under Civil Rule 37(a)(1), a motion to compel disclosure or discovery must certify that the movant has in good faith conferred or attempted to confer with the party failing to make disclosure or discovery in an effort to obtain it without court action. And under LBR 7037-1(b), a motion to compel discovery must set forth the relevant discovery request. Owen did not make the required certification, which by itself warrants my denial of the motion.[39] He referred to Jennifer's "misplacement of account documents under discovery," but then he said that he "re-sent the documents and requested an amended response." If he re-sent documents, he already had them and did not need to get them by discovery. His reference to requesting an "amended response" and "evasive answers" suggests that he might have made some other discovery request, but he does not say what that request was. In other words, he does not identify any document request or other

---

[38] Docket item 156.
[39] *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1010 (9th Cir. 2004).

discovery request to which Jennifer had not complied. Nor does he say how she failed to make the Civil Rule 26(a) disclosures.

After the January 22 hearing, the court clerk docketed Owen's "response"[40] to Jennifer's response to his contempt motion. That paper is in fact a reply in support of the contempt motion, which is prohibited by local rule.[41] Even if I were to consider the reply, it does not add to his prior papers and his January 22 testimony.

I will deny the contempt motion, both as one for contempt and as one to motion to compel discovery, and I will grant Jennifer's request for attorney fees under Civil Rule 37(a)(5)(B).

## B.    Application of Civil Rule 56(d)

In his summary-judgment opposition,[42] Owen refers to Civil Rule 56(d) and contends that "key discovery questions remain unanswered and Defense is contemptuous of its duty to disclose [note 3]." Note 3 says "Rule 34(a)(1)(B); & ECF [69]." Civil Rule 34 governs document-production. Docket item (ECF) 69 in this action is Jennifer's motion to extend the deadline to file dispositive motions; it does not address discovery.

Civil Rule 56(d) permits a court to defer disposition of a summary-judgment motion to give the opponent time to obtain declarations or take discovery—if the opponent provides a supporting declaration.[43] Although Owen did not provide a declaration, he refers at least once to Civil Rule 56(d)[44] and otherwise suggests that he needs more discovery from Jennifer.[45]

---

[40] Docket item 162.
[41] LBR 7007-1(b)(3)(B).
[42] Docket item 149.
[43] Civil Rule 56(d).
[44] Docket item 151 at 3.
[45] *See, e.g.*, docket item 148 at 1; docket item 147.

A summary-judgment opponent who wants to take additional discovery "must explain what further discovery would reveal that is essential to justify [its] opposition to the motion[] for summary judgment."[46] Although the opponent cannot predict "precisely what further discovery *will* reveal, . . . the evidence sought must be more than the object of pure speculation."[47] The opponent must "show [that]: (1) it has set forth in affidavit form *the specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."[48] In short, to obtain a deferral under Civil Rule 56(d), Owen must demonstrate that there exist facts that will enable him to support his claims at trial and that, if I give him more time, he will be able to find and present them.

I see no use in deferring my decision on the summary-judgment motion. Owen has not provided an affidavit, or even an explanation establishing that he needs more time to conduct discovery or that he would be able to come up with evidence if I gave him more time. This action has been pending for more than eight months, and he has not presented any evidence that would support his claims—not a single affidavit, declaration, deposition, or document. I don't believe that the situation would change if I gave him more time. At the January 15 hearing, when I asked him what he hoped to discover if given more time, he mentioned a newly obtained document from Wells Fargo that proves the "corporality" of Jennifer, Alan, and Regan; (2) testimony he hoped to obtain from her about her relationship with her "barristers"; and (3) information about some account numbers. He has not shown that these items would support his claims or why he has not been able to obtain them yet. At the January 22 hearing, I asked him to state again what

---

[46] *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (emphasis in original, and internal quotation marks omitted).
[47] *Id*. (internal quotation marks omitted).
[48] *Id*. (emphasis in original, and internal quotation marks omitted).

he hoped to discover, and he said he hoped to uncover assets from which to recover and to prove that Jennifer, Alan, and Regan are a corporation. These items of information would not support any of his claims.

## V.    Jennifer is entitled to judgment on each of Owen's claims.

Owen's operative complaint at least attempts to assert several claims for relief. I will address them in the grouping and order in which Jennifer addresses them, rather than in the order they appear in the operative complaint: (1) violations of 18 U.S.C. §§ 1341, 1348,[49] and 3284;[50] (2) violation of 15 U.S.C. § 77q;[51] (3) objection to her exemption of assets;[52] (4) objection to her discharge under section 727(a)(3) and (4) of the Bankruptcy Code (title 11 of the U.S. Code);[53] and (5) request to revoke Jennifer's chapter 7 bankruptcy discharge under section 727(d)(1) and (2).[54]

In the Nature of Suit section of the case cover sheet filed with the initial complaint, Owen checked boxes indicating that the complaint also included claims under Bankruptcy Code sections 523(a)(4), (6), and (8) and 548 and for injunctive relief. But I can find no such claims in the operative complaint itself.

In Owen's summary-judgment response, in addition to addressing discovery issues and asserting that issues of material fact remain, he refers to his proposed crossclaim against the trustee.[55] Jennifer is presently the sole defendant, and her pending motions of course deal only

---

[49] Docket item 58, ¶ 6)a.
[50] Docket item 58, ¶ 8.
[51] Docket item 58, ¶ 6)b.
[52] Docket item 58, ¶ 3.
[53] Docket item 58, ¶ 2.
[54] Docket item 58, ¶ 1; docket item 75.
[55] Docket item 142.

with claims against her. Nothing in the proposed crossclaim against the trustee supports his claims against her. I will address his other responses in my discussion below of his claims.

### A. Claim 1A: 18 U.S.C. §§ 1341, 1348, and 3284

In the third-amended complaint,[56] Owen addresses 18 U.S.C. §§ 1341 and 1348 in paragraph 6)a and 18 U.S.C. § 3284 in paragraph 8. Jennifer addresses them together as claim 1. Because he addresses them separately, I will address his reliance on sections 1341 and 1348 as claim 1A and his reliance on section 3284 as claim 1B.

Owen's proposed fourth-amended complaint[57] would eliminate claims 1A and 1B. I will address those claims even though his motion to amend the complaint suggests that he has decided not to pursue them.

In claim 1A, Owen "charges . . . a) Swindling and fraud under 18 U.S.C. §1341 and 1348." Sections 1341 and 1348 of title 18 of the U.S. Code are criminal statutes. Section 1341 is captioned "frauds and swindles" and is the general federal statute criminalizing mail fraud. Section 1348 is captioned "Securities and commodities fraud" and imposes criminal penalties for fraud in connection with securities and commodities.

Only the U.S. attorney can initiate criminal prosecutions. Courts usually do not allow private citizens to sue others based on alleged violations of criminal statutes.[58] Courts will only allow an action based on a statute if Congress intended to permit private actions based on that statute.[59]

---

[56] Docket item 58 at 1.
[57] Docket item 134.
[58] *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("this Court has rarely implied a private right of action under a criminal statute").
[59] *McGreevey v. PHH Mtg. Corp.*, 897 F.3d 1037, 1044 (9th Cir. 2018).

At least three federal Courts of Appeals—those for the Fifth, Sixth, and Eighth Circuits—have held that section 1341 cannot be the basis of a private action.[60] The Ninth Circuit has said the same thing in a 2010 unpublished decision.[61] At least a few district court decisions have held that section 1348 cannot support a private action.[62] Because I find nothing in this statute to suggest that it was intended to create a private right of action, I conclude that it also cannot be the basis of a claim in this action.

Even if those statutes did create private rights of action over which the bankruptcy court has subject-matter jurisdiction, the complaint lacks the required short and plain statement of facts supporting liability.[63]

On claim 1A, I will grant Jennifer judgment on the pleadings and deny her motion for summary judgment as moot.

### B.    Claim 1B: 18 U.S.C. § 3284

In paragraph 8 of the third-amended complaint,[64] Owen "charges the culture of concealment as an issue under 18 U.S.C. § 3284 and shall be interpreted as such." Section 3284 says

> The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge.

---

[60] *Ryan v. Oh. Edison Co.*, 611 F.2d 1170, 1177 (6th Cir. 1979); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977); *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999).

[61] *Ross v. Orange Co. Bar Ass'n*, 360 Fed. Appx. 868 (9th Cir. 2010) (unpub.).

[62] *Stone v. Stanislaw Cty. Superior* Court, 2015 WL 411227, at *7 (E.D. Cal. Jan. 30, 2015); *Gudzelak v. PNC Bank*, 2013 WL 3949526, at *3 (D. Del. July 29, 2013); *Hooker v. Hooker*, 2013 WL 12253554, at *5 (W.D. Tenn. Mar. 18, 2013); *Troyer v. Hershberger*, 2012 WL 488251, at *8 (N.D. Oh. 2012); *Butler v. Onewest Bank, FSB*, 2010 WL 3156047, at *3 (D. Haw. Aug. 6, 2010).

[63] Civil Rule 8(a)(2).

[64] Docket item 58 at 1.

That statute is purely procedural, setting the deadline for the U.S. attorney to prosecute certain bankruptcy crimes. It provides no grounds for criminal or civil liability.

On claim 1B, I will grant Jennifer judgment on the pleadings and deny summary judgment as moot.

### C.    Claim 2: Interstate securities fraud (15 U.S.C. § 77q)

In paragraph 6)b of the third-amended complaint, Owen "charges . . . Interstate securities fraud under 15 U.S.C. § 77q." Section 77q, better known as section 17(a) of the Securities Act of 1933, generally bars the use of interstate commerce to fraudulently or deceitfully offer or sell securities. Although this statute does not define a crime, courts have consistently held that it also does not create a private right of action.[65] And, even if it did, he has alleged no facts that would support relief under it.

On claim 2, I will grant Jennifer judgment on the pleadings and deny summary judgment as moot.

### D.    Claim 3: exemption objection

In paragraph 3 of the third-amended complaint, Owen "objects to exempting estate assets obtained through fraud [note 2] and failure to maintain the assets of a federally insured depository institution [note 3]." Note 2 says "11 U.S.C. § 523(a)(2)," and note 3 says "11 U.S.C. § 523(a)(12)."

Owen's proposed fourth-amended complaint[66] would eliminate claim 3. I will address claim 3 even though his motion to amend the complaint suggests that he has decided not to pursue it.

---

[65] *See*, *e.g.*, *Brattain v. Alcitepe*, 934 F. Supp. 2d 119 (D.D.C. 2013); *Riley v. Brazeau*, 612 F. Supp. 674 (D. Or. 1985).
[66] Docket item 134.

Owen's reference in claim 3 to exempting estate assets could be interpreted as objecting to Jennifer's claim of exemption for one or more assets. Bankruptcy exemptions are governed by Bankruptcy Code § 522, which he does not cite. Section 522 permits a debtor to exempt certain property from the estate, which means the property cannot be used to pay creditors. Creditors or the trustee may object to exemptions under Federal Rule of Bankruptcy Procedure (Bankruptcy Rule) 4003(b). They must file any such objection within 30 days after the meeting of creditors or within 30 days after the exemption is claimed, whichever is later,[67] unless either the exemption was fraudulently asserted, in which case the trustee (but only the trustee) can object up to a year after the closing of the case, or the objection is based on section 522(q), which does not apply here.

The meeting of creditors was on April 19, 2018,[68] and Jennifer filed her most recently amended schedules on April 25,[69] making the exemption-objection deadline May 25, 2018, at the latest. Owen did not file the initial complaint until June 7, 2018, and his exemption objection did not appear until the first-amended complaint, filed on August 29, 2018.[70] The objection is thus untimely. It is also inadequately pleaded, because it does not identify any specific exemption to which he objects, nor does it state any basis for denying any exemption. Thus, to the extent claim 3 is an exemption objection, it fails to state a claim.

If Owen had meant only to object to exemptions, he would have no reason to refer to section 523(a) in footnotes 1 and 2. Out of caution, I will address those references as well. Section 523(a) sets forth types of claims that cannot be discharged in a chapter 7 case. Note 2

---

[67] Bankr. R. 4003(b)(1).
[68] Main-case docket item 6.
[69] Docket item 127 ¶ 8; main-case docket item 13.
[70] Docket item 34.

Case 18-03057-dwh    Doc 168    Filed 03/08/19

refs to section 523(a)(2) and is linked to his textual allegation that he "objects to exempting estate assets obtained through fraud." That section makes nondischargeable a debt for the debtor's "false pretenses, a false representation, or actual fraud" or a false written statement respecting the debtor's or an insider's financial condition.[71]

In the complaint, Owen does not describe any debt that Jennifer owes him, any representations that she made to him, or any fraudulent act by her.

In his response to the motions, he says "[t]he Thurston County Superior [note 1, a court case number] & Washington County Circuit [note 2, a court case number] Court decisions are the underlying basis of claims,"[72] but he does not include copies of the court decisions or describe their terms. He also discusses garnishment, corporations, divorce, connivances, and fraud by the trustee,[73] but not fraud by Jennifer. Thus, even if the response were considered part of the complaint, it includes no statement of facts showing the existence of a debt owed by Jennifer to Owen and particularized[74] facts satisfying each element of common-law fraud. Including the phrase "estate assets obtained through fraud" does not satisfy those requirements.

Even if Owen is trying to impute fraud liability to Jennifer based on the silver transaction he described in his initial complaint and in his proposed fourth-amended complaint, he has made no allegations that she had any role in it. His arguments that "marriage is a legal partnership" and that she has "failed to objectify a legitimate framework to separate the Regan-McCaws"[75] are beside the point, and his argument that "Jen in particular played into the connivances"[76]—

---

[71] 11 U.S.C. § 523(a)(2)(A), (B).
[72] Docket item 151 at 1, ¶ 2, and 3 re Section C – Third Claim.
[73] Docket item 151 at 3.
[74] Civil Rule 9(b).
[75] Docket item 151 at 3.
[76] *Id.*

presumably by Alan and Regan—is insufficient to overcome summary judgment because he has provided no evidence of "connivances" or of her involvement. If he is arguing that Jennifer is responsible for something that Alan or Regan did just because she is married to Alan, he refers to no principle of law supporting that proposition, and I am not aware of any.

Note 3 refers to section 523(a)(12) and is linked to his textual objection to "failure to maintain the assets of a federally insured depository institution." Section 523(a)(12) makes nondischargeable a debt "for malicious or reckless failure to fulfill any commitment by the debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution . . .."[77] It was enacted in 1990 in response to the savings-and-loan crisis of the 1980s[78] and was intended "to affect insiders within bank and thrift institutions who were involved in wrongful acts that jeopardized the financial health of their institutions."[79] I agree with Jennifer that section 523(a)(12) applies only to a debtor "at the helm of a failed insured depository institution."[80]

In response, Owen argues that "Defendant's contract failings as both Surety and Guarantor in Trust became liabilities to Wells Fargo NA." [81]That statement, whatever it means, is inadequate to allege that Jennifer was responsible for maintaining the capital of Wells Fargo NA. He also says that the statement about section 523(a)(12) applying to a debtor at the helm of a failed insured financial institution applies to "all Defendants," but he provides no explanation

---

[77] 11 U.S.C. § 523(a)(12).
[78] *See Meyer v. Rigdon*, 36 F.3d 1375, 1380 (7th Cir. 1994) (discussing and quoting legislative history of the "savings and loan section" of the 1990 bankruptcy legislation in which the House Judiciary Committee's chair described the bill as intended "to close off the bankruptcy escape hatch for bank and thrift insiders" who commit "acts of fraud and malice").
[79] *In re Slade*, 471 B.R. 626, 652 n.26 (Bankr. D.N.M. 2012), citing 3 Norton, *Norton Bankr. L. & Prac. 3d* § 57:59 (Oct. 2011).
[80] Docket item 128 at 10.
[81] Docket item 151 at 3.

Case 18-03057-dwh    Doc 168    Filed 03/08/19

of that sentence or any supporting evidence.[82] Her declaration states that she has never worked for a bank or other depository institution.[83] It also says that she is not "a trustee, beneficiary, or otherwise involved in a trust known as the McCaw Group Trust."[84] But even if she had been involved with a particular trust, that's not the same thing as having a responsibility to maintain the capital of a depository institution. Owen has not offered evidence to refute hers and thus to show the existence of a genuine issue of material fact.

To the extent that claim 3 is an exemption objection, I will grant Jennifer judgment on the pleadings and deny summary judgment as moot. To the extent that it requests a determination of nondischargeability under section 523(a)(2), I will grant her both judgment on the pleadings and summary judgment. To the extent that it invokes section 523(a)(12), I will grant judgment on the pleadings and deny summary judgment as moot.

### E. Claim 4: objection to discharge (11 U.S.C. § 727(a)(3) and (4))

In paragraph 2 of the third-amended complaint, Owen states that he "objects to discharge under §727(a)(3) & (4) et al. No investment disclosures to trustee have been made. [note 1, stating "11 U.S.C. § 547"]." Sections 727(a)(3) and (4) are alternate circumstances in which the court must deny a chapter 7 discharge. I will refer to Owen's separate allegations relying on those paragraphs as counts 1 and 2 of claim 4.

Owen's proposed fourth-amended complaint[85] would eliminate claim 4. I will address that claim even though his motion to amend the complaint suggests that he has decided not to pursue it.

---

[82] Docket item 151 at 4.
[83] Docket item 126 at 7, ¶ 7.
[84] Docket item 126 at 7, ¶ 8.
[85] Docket item 134.

Case 18-03057-dwh    Doc 168    Filed 03/08/19

Jennifer has filed her and the trustee's declarations stating that Jennifer provided to the trustee all of Jennifer's account statements covering the 30-day period before and through the petition date,[86] that the only account documents related to the McCaw Group Trust were given to Jennifer by Owen,[87] and that Jennifer has no investment account documents for Regan or Secure Gold & Silver Group LLC.[88] In his response, he makes critical comments about the trustee[89] but does not describe, much less offer, any evidence to contradict Jennifer's.

Owen filed the complaint on June 7, 2018. Because he did not check box 41 in the Nature of Suit section of the complaint cover sheet to indicate that the complaint contained an objection to discharge, the court complied with the requirement to enter the discharge "forthwith" after expiration of the discharge-objection deadline[90] and did so on August 2, 2018.[91]

### 1. Count 1: section 727(a)(3)

Under section 727(a)(3), the court must deny discharge if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.[92]

The purpose of this provision "is to make discharge dependent on the debtor's true presentation of [the debtor's] financial affairs."[93] The objecting creditor must show "that the debtor failed to

---

[86] Docket item 127 at 3, ¶¶ 10-11.
[87] Docket item 127 at 4, ¶ 19.
[88] Docket item 127 at 4, ¶ 22.
[89] Docket item 151 at 4.
[90] Bankr. R. 4003(c)(1).
[91] Main-case docket item 34.
[92] 11 U.S.C. § 727(a)(3).
[93] *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008).

Case 18-03057-dwh    Doc 168    Filed 03/08/19

maintain and preserve adequate records" and "that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."[94]

Owen's allegation that Jennifer failed to disclose investment accounts to the trustee arguably alleges that she "concealed . . . recorded information . . . from which the debtor's financial condition or business transactions might be ascertained" and thus states a claim under section 727(a)(3).

Jennifer has filed her declaration that (1) she provided the trustee with all of her account statements for the 30-day period through the petition date; (2) the only account documents related to the McCaw Group Trust that Jennifer had were given to her by Owen; and (3) she has no investment account documents for Regan or Secure Gold & Silver Group LLC. Owen has not offered any evidence contradicting Jennifer's. Her evidence negates his allegation that she failed to make investment-account disclosures to the trustee. If he believes that she has other financial accounts that she didn't disclose to the trustee, it was his burden to furnish evidence; he did not do so. She has demonstrated the absence of a genuine issue of material fact on count 1. After the January 22 hearing, he filed his affidavit,[95] Exhibits A and B to which appear to be Wells Fargo statements addressed to Regan. Her name is not on the statement, but the accountholder's address is her current address on the main-case docket. Even if I were to accept the exhibits as evidence, Regan's use of her address on a bank account does not support Owen's claims against her.

Owen also argues that the trustee was somehow involved in fraud.[96] Even if this were true, that fraud could not result in denial of Jennifer's discharge.

---

[94] *Id.* (internal quotation marks omitted).
[95] Docket item 163.
[96] Docket item 151 at 4.

On count 1 of claim 4, I will deny Jennifer judgment on the pleadings and grant her summary judgment.

### 2. Count 2: section 727(a)(4)

Under section 727(a)(4), the court must deny discharge if the debtor knowingly and fraudulently (1) made a false oath or account, (2) presented or used a false claim, (3) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act, or (4) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.[97]

Jennifer's alleged failure to disclose investment accounts might, if proved, constitute either a false oath (because she omitted account information from her schedules) or a withholding of records from the trustee.

I will deny Jennifer judgment on the pleadings on count 2 of claim 4. But for the reasons that I will grant her summary judgment on count 1, I will do so as well on count 2.

### F. Claim 5: request to revoke discharge (11 U.S.C. § 727(d)(1) and (2))

In paragraph 1 of third-amended complaint, Owen "seeks relief from the August 2, 2018 discharge order, pursuant to the Revoke motion under 11 U.S.C. §727." In the first-amended motion to revoke bankruptcy discharge, which is also part of the operative complaint, Owen states:

> With original jurisdiction under 28 U.S.C. §1334 and relief from fraud under Rule 60(b)(3) [note 1] and within purview of 11 U.S.C. §727(e), the Creditor demands the revocation of discharge due to the following:
>
> > 1) 11 U.S.C. §727(D)(1); Debtor failed to release investment account documents, (per subpoenas);

---

[97] 11 U.S.C. § 727(a)(4)(A)-(D).

2) 11 U.S.C. §727(D)(2); Debtor failed to release investment account documents held between spouses ("McCaw Group Trust") and Thomas O. Regan (SSN: xxx-xx-8753); (DOB: xx/xx/64); ("Secure Gold & Silver Group LLC"; Idaho).

Section 727(d)(1) and (2) are two of four circumstances in which the court must revoke a discharge. I will refer to Owen's separate reliance on those provisions as counts 1 and 2 of claim 5.

Owen's proposed fourth-amended complaint[98] would eliminate claim 5. I will address that claim even though his motion to amend the complaint suggests that he has decided not to pursue it.

### 1.    Count 1: section 727(d)(1)

Under section 727(d)(1), the court must revoke a discharge if the "discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." The plaintiff must also prove that the discharge would not have been entered but for the fraud.[99]

As noted in part V.E.1 on page 17, Jennifer has filed her and the trustee's declarations stating that (1) Jennifer provided to the trustee all of Jennifer's account statements covering the 30-day period before and through the petition date,[100] (2) the only account documents related to the McCaw Group Trust were given to Jennifer by Owen;[101] and (3) Jennifer has no investment account documents for Regan or Secure Gold & Silver Group LLC.[102] Owen has not offered any evidence contradicting Jennifer's.

---

[98] Docket item 134.
[99] *In re Nielsen*, 383 F.3d 922, 925 (9th Cir. 2004).
[100] Docket item 127 at 3, ¶¶ 10-11.
[101] Docket item 127 at 4, ¶ 19.
[102] Docket item 127 at 4, ¶ 22.

In count 1, Owen alleges only that Jennifer failed to release (to an unnamed person) documents, presumably required by subpoena. He does not state who issued the subpoena, to whom it was issued, or what documents were requested. Nor does he allege facts demonstrating at all, much less with particularity,[103] how the failure to release documents constituted fraud, that the fraud occurred before discharge, how the fraud enabled her to obtain her discharge, that the discharge would not have been entered but for the fraud, and that he did not know of the fraud before discharge. Nothing in his response demonstrates that count 1 states a claim for relief.

On count 1 of claim 5, I will grant Jennifer both judgment on the pleadings and summary judgment.

### 2.    Count 2: section 727(d)(2)

Under section 727(d)(2), discharge revocation is required if

> the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee.

The plaintiff must also have been unaware of the situation before entry of discharge.[104]

In the count 2, Owen repeats his allegation that Jennifer failed to release investment-account documents, except that he removes the reference to a subpoena and adds references to McCaw Group Trust, Regan, and Secure Gold & Silver Group LLC. He does not allege that she acquired or became entitled to acquire any investment accounts that were estate property and failed to deliver (or report their existence) to the trustee. Nor does he allege that he was unaware of the situation before entry of discharge.

In Owen's memorandum in opposition, he says

---

[103] Civil Rule 9(b).
[104] *In re Dietz*, 914 F.2d 161, 164 (9th Cir. 1990).

> Defense/Debtor is in contempt of its own discovery proceedings [ECF 69].
> Defense admits and substantiates Plaintiff's claims by citing "Debtor did <u>not</u>
> commit fraud by <u>not</u> releasing [documents]. A double-negative is an affirmative.
> Plaintiff asserts violations of FRCP 11(b), et al. by Trustee.

Nothing in that memorandum solves the pleading deficiencies in count 2 or constitutes evidence contradicting Jennifer's.

On count 2 of claim 5, I will grant Jennifer both judgment on the pleadings and summary judgment.

## VI.     The complaint includes assertions that aren't claims for relief.

In addition to the complaint's claims for relief discussed above, the complaint makes the following three assertions, which are not claims for relief: (1) Jennifer, together with Alan and Regan, are a "de facto corporation"; (2) she, Alan, and Regan share home and business addresses; and (3) she has provided "no affirmative defense" since the entry of a garnishment order in a Washington state-court case in October 2017.

### A.     Are the McCaws and Regan a de facto corporation?

Jennifer argues that this allegation "do[es] not make sense,"[105] and in her declaration she states that she has never done business with Alan or Regan.[106] Owen denies this statement, but he offers no evidence to rebut it. He instead refers to "estoppel from Thurston County Superior and Washington Circuit Court decisions." But he does not provide a copy of any decision of those courts in which the courts decided that she has done business with Alan or Regan.

Jennifer's initial answer included many attachments, some of which are documents from the Washington and Oregon state courts. They are not evidence and are not in the summary-judgment record. But in the interest of giving Owen the benefit of every possible doubt, I've

---

[105] Docket item 128 at 9.
[106] Docket item 126 ¶ 3.

looked at them, and they say nothing whatsoever about whether Jennifer did business with Alan or Regan.

One court has explained the de facto corporation doctrine as follows:

> The de facto corporation doctrine provides that a defectively formed corporation—that is, one that fails to meet the technical requirements for forming [an actual] corporation—may attain the legal status of a . . . corporation if certain requirements are met . . . . [C]ourts perceive and treat it in all respects as if it were a properly formed . . . corporation.[107]

In other words, a de facto corporation is a business organization that was never legally constituted as a corporation but whose organizers have behaved as if they had organized a corporation—they hold corporate meetings, issue stock, elect a board of directors, and so on. When organizers think they are forming a corporation but, through some technical mistake, fail to do so, the doctrine permits a court to overlook the technicality and treat them as having formed a real corporation.

Owen's position seems to be that any three people who act in concert or do business together are therefore a corporation[108]—but that is not the law. Even if Jennifer had done business with the others, doing so would not make them a corporation. I therefore conclude that his allegation of a "de facto corporation" is unsupportable, and in any case, it does not constitute a claim or support any of his claims.

**B.    *Do Jennifer, Alan, and Regan share home and business addresses?***

Jennifer's declaration states that she used to live with her husband, Alan, but they are now separated and have lived in different homes since the summer of 2017.[109] She says that she has never lived with Regan.[110] In response, Owen argues that "there is no legal separation,

---

[107] *Duray Dev., LLC v. Perrin*, 792 N.W.2d 749 (Mich. App. 2010).
[108] Docket item 58 ¶ 4 n.4.
[109] Docket item 126 ¶ 5.
[110] Docket item 126 ¶ 4.

parenting plan, or divorce filed; Each enjoys unencumbered access." He offers no evidence to support this contention, but in any case, his statement does not deny hers. The Wells Fargo statements that he attached to his affidavit show only that Regan has used her mailing address for Wells Fargo accounts.

Jennifer has not claimed to be legally separated from Alan; she says only that they don't live together. It may be that Alan "enjoys unencumbered access" to her home; there is no evidence either way on that issue. But it makes no difference. Even if the McCaws continued to live together, or if they shared a business address with Regan, that fact would have nothing to do with any of the claims for relief.

### C.    Has Jennifer failed to provide an affirmative defense to a state-court garnishment?

Jennifer does not address this allegation except to comment that it "do[es] not make sense."[111]

An affirmative defense is "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."[112] A defendant need not present affirmative defenses to prevail in litigation. More importantly, Jennifer's failure to present an affirmative defense to a prepetition state-court garnishment is irrelevant to the merits of Owen's claims in this action.

---

[111] Docket item 128 at 9.
[112] Black's Law Dictionary (10th ed. 2014).

**VII.    I will deny the other pending motions.**

    *A.    Owen's motions*

In addition to the contempt motion discussed in part IV.A on page 5, seven motions by Owen remain pending; I set them for hearing with Jennifer's motions on January 15.[113] I will deny each of them.

           **1.    Motion to Amend Complaint (Fourth Amended)[114] and Motion to Revoke Discharge (Second Amended)[115]**

Owen moves to amend his complaint again and attaches a copy of the proposed fourth-amended complaint, which would supersede the third-amended complaint (one of two documents together constituting the operative complaint). Except for paragraph 5, the proposed new complaint is the same as the second-amended complaint;[116] the proposed new paragraph 5 is the same as paragraph 3 of the initial complaint: "Plaintiff contends that a total of $43,570 was deposited through the fiduciary agency of ALAN MCCAW into accounts belonging to both MCCAW and REGAN between September 12, 2012 and May 31, 2013 for contracts totaling 4915 troy ounces of silver." There are more differences between the proposed new complaint and the current, third-amended complaint, including the deletion of paragraphs 1 through 3 and 5 of the third-amended complaint. But none of the changes in the proposed new complaint would solve the pleading deficiencies identified in the motion for judgment on the pleadings.

Owen has also filed a second-amended motion to revoke discharge. The second-amended revocation motion would supersede the first-amended revocation motion, which is the second of the two documents constituting the operative complaint.[117] Thus, as with the proposed fourth-

---

[113] Docket items 136 (re 134), 154 (re 141-46).
[114] Docket item 134.
[115] Docket item 146.
[116] Docket item 73 at 2; docket item 134 at 2.
[117] Docket item 117.

amended complaint, the new revocation motion couldn't be effective without leave of court. The new revocation motion repeats the prior motion's allegations that Jennifer failed to release investment-account documents, and it adds accusations that the trustee has somehow been involved in the fraud. The amendment would not affect claims against Jennifer.

Although pleading amendments ordinarily are liberally allowed, a court must consider the following facts in ruling on a request for leave to amend: (1) undue delay, bad faith, or dilatory motive; (2) repeated failure to cure deficiencies through previous amendments; (3) undue prejudice to the opposing party; and (4) futility of amendment.[118] Over the course of eight months and several previous amendments, Owen has come no closer to stating a cognizable claim. He does not explain in the motion to file the fourth-amended complaint or elsewhere how his proposed complaint amendments would solve any of the complaint's legal deficiencies—why it would not be futile. The motion alludes to a discovery dispute, but for the reasons stated in part IV.B on page 7, he has failed to pursue the remedies for such a dispute, so it is not now before me. I do not impute bad faith or an improper motive to his request to amend, but the other factors weight against granting leave. I therefore conclude that the delay has been excessive and that amendment would be futile. I will deny leave to amend the complaint.

### 2.  Motion to sanction trustee[119]

Owen accuses the trustee of "engineer[ing] a professional 'kill' operation" for her personal gain. The only authority the motion cites is Civil Rule 11. Both that rule, which does not apply to this action, and Bankruptcy Rule 7011, which does, apply only to parties and their counsel. The trustee is neither.

---

[118] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).
[119] Docket item 141.

Case 18-03057-dwh    Doc 168    Filed 03/08/19

### 3.    Crossclaim[120]

The crossclaim overlaps the motion to sanction the trustee. Owen seems to accuse the trustee of conspiring with Jennifer to harm him. He also accuses the trustee of defrauding the United States and of "discriminatory pricing for identical services."

A crossclaim by a plaintiff is a claim filed against another existing plaintiff in the same action. The trustee is not a party of any type in this action; the trustee's only role is that she provided a declaration in support of Jennifer's summary-judgment motion. Owen has not requested leave to amend his complaint to insert this claim.

Owen has not identified any way in which making his crossclaim against the trustee part of this action would affect my decision to grant one or both of Jennifer's dispositive motions on each of his claims against Jennifer. Nor has he argued that he would be prejudiced by pursuing his crossclaim against the trustee in a separate action. Even if I were to treat the crossclaim as containing an implicit motion for leave to amend the complaint by adding the trustee as a defendant and the text of the crossclaim as the allegations against the trustee, I would exercise my discretion to deny that motion. If he wants to sue the trustee, he will have to file a separate action against her.

At the January 15 hearing, the trustee's lawyer, Timothy Solomon, argued that Owen lacks standing to request sanctions or to assert claims against the trustee and that Owen failed to request leave of the court to sue her, invoking the *Barton*[121] doctrine that, before suing a court-appointed receiver, leave of the appointing court is required. The Ninth Circuit has applied that doctrine to bankruptcy trustees.[122] In response, Owen filed a document entitled "Notice of

---

[120] Docket item 142.
[121] *Barton v. Barbour*, 104 U.S. 126 (1881).
[122] *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005).

Special Issue: Allodial Declaration Under Land Patent"[123] and attached a copy of a land patent signed by U.S. President Woodrow Wilson in 1917. Owen argues that the patent somehow gives him standing to sue the trustee. Because I will deny his implicit motion for leave to amend the complaint to add the trustee as a defendant, I need not address the trustee's standing or *Barton* arguments.

### 4.    Motion of Special Issue: Declarations by Trustee Objectified[124]

Owen says the trustee is pursuing an "occult agenda" and that the trustee somehow misconstrued his equity rights as a secured creditor. He makes four requests. First, he first seeks appointment of a master under Civil Rule 53(a)(1)(B)(i). He identifies no reason to appoint a master.

Second, Owen requests that I "implement a judge's panel" under Civil Rule 56(d)(3). Civil Rule 56(d) (which I address in part IV.B on page 7) addresses what a court should do when a summary-judgment opponent cannot present facts to justify his position, and paragraph (3) allows the court to "issue any other appropriate order." This trustee-related motion is not connected in any way with his summary-judgment motion, so Civil Rule 56(d) is irrelevant. In any case, he does not explain what he means by a "judge's panel" or explain why one should be implemented.

Third, Owen requests that I "address factual and empirical discrepancies between the Court forms and Trustee baords [*sic*]; supplanted per 11 U.S.C. 327." Section 327 relates to employment by the trustee of professional persons. It has nothing to do with this motion.

---

[123] Docket item 164.
[124] Docket item 143.

Fourth, Owen requests that I act as a "[l]iaison between litigating parties and Trustees." Except when a judge of this court (other than the presiding judge) acts as a mediator—which is not the case in this action—the court does not act as a liaison between litigants.

### 5.    Motion to Reopen Pleadings[125]

Owen wants to reopen pleadings because of alleged discovery violations and the alleged failure of the trustee to (1) characterize him as a secured creditor, (2) direct "counsel" to file under a different chapter, (3) terminate a lease to which Alan is a party, and (4) address "concealed or ignored information leading to discovery of spouse Alan's investment trust accounts."

None of these things, if true, would support reopening the pleadings. If there's been a discovery violation, Owen should have filed a motion to compel; the motion to reopen pleadings is not a motion to compel. It's not the trustee's job to tell creditors whether they're secured or unsecured, and nothing the trustee did has had any effect on his secured or unsecured status. Trustees also don't advise debtors on what bankruptcy chapter to file under. Alan's lease and investment accounts have no relevance whatsoever to this action or Jennifer's bankruptcy case.

### 6.    Motion for Contempt on Discovery[126]

Owen seeks contempt for alleged discovery violations. Contempt may be ordered only against a party who has violated a court order; I've entered no orders in this action compelling discovery. And to obtain an order compelling discovery, Owen must comply with Civil Rule 37 and LBR 7037-1. Among other prerequisites that he has not satisfied, he must confer with

---

[125] Docket item 144.
[126] Docket item 145.

Case 18-03057-dwh    Doc 168    Filed 03/08/19

opposing counsel and attempt to resolve the dispute. He also identifies no specific discovery requests that Jennifer has failed to comply with.

At the continued hearing on January 22, one of Jennifer's lawyers, Rosemary Zook, testified that Zook or her office responded to every discovery request that Owen made. Although he testified that he did not receive the response to one of his requests, I have no reason to doubt that it was sent, and I believe Zook's testimony.

### B. Jennifer's motion

Jennifer has filed a precautionary motion for relief from the amended scheduling order and to continue the trial.[127] Because I will grant judgment for her on each of Owen's claims, her motion is moot, and I will deny it for that reason.

## VIII. Hackett Law Firm LLC is not a defendant.

At Owen's request, the court clerk issued to him for service a summons naming as defendants both Jennifer and Hackett Law Firm LLC, which represents Jennifer.[128] Apparently for that reason, the court's docket for this action lists the firm as a defendant.

But the docket contains no proof of service of that summons, and the present version of the complaint neither names the firm as a defendant nor includes any claims for relief against the firm. The firm is thus not a defendant. It has been the target of two sanctions motions by Owen, but I denied them.[129]

---

[127] Docket item 153.
[128] Docket item 44.
[129] Docket items 43, 62, 76, 107.

## IX. Conclusion

I will grant Jennifer judgment on the pleadings on claims 1A (18 U.S.C. §§ 1341 and 1348), 1B (18 U.S.C. § 3284), 2 (15 U.S.C. § 77q), 3 (exemption objection), and 5 (11 U.S.C. § 727(d)(1) and (2)). I will otherwise deny the motion for judgment on the pleadings.

I will grant her summary judgment on claim 3 (exemption objection) to the extent that it requests a determination of nondischargeability under 11 U.S.C. § 523(a)(2) and claims 4 (11 U.S.C. § 727(a)(3)) and 5 (11 U.S.C. § 727(d)(1) and (2)). I will otherwise deny the summary-judgment motion.

I will deny the remaining motions. Within 14 days after entry of the order denying the contempt motion, Jennifer may file a motion for attorney fees incurred in defending it.

# # #

cc: Ronald A. Owen